**MARSHALL, DENNEHEY, WARNER,**
**COLEMAN AND GOGGIN**
BY:  Paul G. Lees, Esquire                                                 **Attorneys for Defendant,**
Identification No. 68886                                                       **Thomas J. Logan**
1495 Valley Center Parkway, Suite 350
Bethlehem, PA  18017-2342
(484) 895-2321
(484) 895-0208 FAX

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD MATTHEWS | : | CIVIL ACTION - LAW |
| | : | |
| Plaintiff | : | NO.: 10-CV-01215 |
| vs. | : | |
| | : | |
| RUNCO'S TAVERN & GRILL, INC., | : | |
| ET. AL. | : | |
| | : | JURY TRIAL DEMANDED |
| Defendants | : | |

**BRIEF OF DEFENDANT, THOMAS LOGAN,**
**IN SUPPORT OF DEFENDANT'S REVISED MOTION FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

Moving defendant incorporates herein by reference his statement of undisputed material facts in support of summary judgment.

The plaintiff initiated the above captioned litigation by the filing of a complaint on or about June 8, 2010.  The plaintiff's complaint arises out of his arrest by Olyphant police officers on February 15, 2009 following a fight that took place at Runco's Bar & Grill ("Runco's") in the early morning hours that day.  (Plaintiff 's Second Amended Complaint, Court Docket document no. 48, attached as Exhibit A to defendant Logan's revised motion for summary judgment)  On the evening of February 14, 2009, Plaintiff picked up his friend Edward Daughton at the Italian American Club after 11:00 pm and then travelled to Runco's which was located approximately ½ mile away.  They arrived at Runco's prior to midnight.  (Transcript of testimony of plaintiff

1

Richard Matthews taken on January 19, 2012, p. 23, attached as Exhibit B to defendant Logan's revised motion for summary judgment)  When plaintiff arrived at Runco's he observed defendant Logan and non-party Edward Daughton sitting at the bar.  (Transcript of testimony of plaintiff Richard Matthews taken on January 19, 2012, p. 27, attached as Exhibit B to defendant Logan's revised motion for summary judgment)   Plaintiff claims he had not known defendant Logan prior to that day and had just met him that evening after arriving at Runco's.  (Transcript of testimony of plaintiff Richard Matthews taken on January 19, 2012, p. 25, attached as Exhibit B to defendant Logan's revised motion for summary judgment)

In his second amended complaint plaintiff claims that a fight broke out between moving defendant Thomas Logan and plaintiff's friend, non-party Brian Doughton.  (Second amended complaint, Exhibit A, ¶ 14 -15)  According to the complaint, plaintiff attempted to intercede and break up the fight however while doing so non-party Noreen Logan, who is moving defendant's wife, jumped on his back and began to "claw" at his face and, in "self-defense" plaintiff admits bit her finger and which resulted in her releasing him.  (Second amended complaint, Exhibit A, ¶ 16 - 17)  Plaintiff claims he then returned to the inside of the bar and ordered another drink while fighting continued outside.  (Second amended complaint, Exhibit A, ¶ 18 - 19)

Defendant Logan had been employed as a police officer by Dickson City police department.  (Testimony of T. Logan, p. 9, attached as Exhibit C to defendant Logan's revised motion for summary judgment.)  As of February 14 – 15, 2009 defendant Logan was out on disability from his employment with Dickson City.  He had previously injured his shoulder on October 20, 2008 and he had not worked as a police officer in any capacity since that date.  (Testimony of T. Logan, pp. 9 - 10, 62 - 63, attached as Exhibit C to defendant Logan's revised motion for summary judgment.)  On the evening of February 14, 2009 defendant Logan was

present at Runco's with his wife Noreen following a Valentine's Day dinner dance they had attended earlier in the evening. (Please see Deposition Transcript of N. Logan, Pages 8, 10, attached as Exhibit E to defendant Logan's revised motion for summary judgment.) Defendant Logan was not wearing a police uniform nor did he have on his person his police badge nor his police issued firearm or any weapon. (Testimony of T. Logan, pp. 63 - 64, attached as Exhibit C to defendant Logan's revised motion for summary judgment; Deposition Transcript of N. Logan, p. 63-64, attached as Exhibit E to defendant Logan's revised motion for summary judgment.)

At no time during the entire occurrence at Runco's did Plaintiff know that defendant Logan was a police officer. (Transcript of testimony of plaintiff Richard Matthews taken on January 19, 2012, p. 40, attached as Exhibit B to defendant Logan's revised motion for summary judgment) At no time during the entire occurrence at Runco's did defendant Logan affirmatively identify himself as being a police officer to anyone. (Transcript of testimony of plaintiff Richard Matthews taken on January 19, 2012, p. 41, attached as Exhibit B to defendant Logan's revised motion for summary judgment; Testimony of T. Logan, p. 63, attached as Exhibit C to defendant Logan's revised motion for summary judgment; Deposition Transcript of N. Logan, p. 55, attached as Exhibit E to defendant Logan's revised motion for summary judgment.)

While the facts regarding what transpired during the fight are disputed by the parties, it is undisputed that the police were called to the bar in response to a 911 call initiated by defendant Logan. (Testimony of T. Logan, p. 42, attached as Exhibit C to defendant Logan's revised motion for summary judgment) Included among the responding officers were the codefendant Olyphant police officers Arthur, Borowicz and Flesher. In the course of investigating the fight, the codefendant officers were informed that after other individuals had pulled Mr. Doughton off moving defendant, the Plaintiff, Richard Matthews jumped on top of defendant Logan, who was

on the ground, and began beating him. (See, Officer Borowicz' testimony, p. 25, attached as Exhibit D to defendant Logan's revised motion for summary judgment; Deposition testimony of N. Logan, Page 17, attached as Exhibit E to defendant Logan's revised motion for summary judgment)  Defendant Logan's wife, Noreen Logan, attempted to pull the plaintiff off her husband and, in response, plaintiff bit her finger. (See, Officer Borowicz' testimony, p. 42, attached as Exhibit D to defendant Logan's revised motion for summary judgment; Deposition testimony of N. Logan, p. 18 - 20, attached as Exhibit E to defendant Logan's revised motion for summary judgment)

     Noreen Logan returned with one of the officers to the inside of Runco's and positively identified the Plaintiff, Richard Matthews, as one of the individuals who had attacked her husband and who had also bitten her finger. (See, Officer Borowicz' testimony, p. 25, attached as Exhibit D to defendant Logan's revised motion for summary judgment; Deposition testimony of N. Logan, Page 23, attached as Exhibit E to defendant Logan's revised motion for summary judgment)  At that time the Plaintiff had swelling, redness and cuts on his hands consistent with having been in a fight.  (See, Officer Borowicz' testimony, p. 44 - 46, attached as Exhibit D to defendant Logan's revised motion for summary judgment)  Moving Defendant Logan's left side of his face was covered in blood due to a cut under his left eye and a "busted" lip.  (Deposition testimony of N. Logan, Pages 39 – 40, attached as Exhibit E to defendant Logan's revised motion for summary judgment)

     The codefendant officers arrested the Plaintiff based on the identification made by Noreen Logan, witness statements and the physical evidence on the plaintiff's hands. (See Officer Borowicz Dep., codefendants' renewed motion for summary judgment, Exhibit "B", at Pages 44, 46.)

Despite the fact that moving defendant Logan's employment as a police officer in a neighboring borough had no role in plaintiff's arrest, plaintiff claims in his second amended complaint that defendant Logan's status as a police officer subjects Logan to liability under §1983 and somehow transforms his private conduct into state action. While not claiming that a conspiracy existed, plaintiff alleges that the codefendant Olyphant Officers had a pre-existing relationship with defendant Logan and that they were therefore biased in favor of Mr. Logan because he was a police officer. (Second Amended Comp at ¶32). Despite extensive discovery Plaintiff has failed to come forward with any evidence of a relationship between the arresting officers and moving defendant.

Officer Borowicz had never met Thomas Logan prior to February 15, 2009 and did not find out that he was a police officer until after the incident. (See, Officer Borowicz' testimony, p. 18, 24, attached as Exhibit D to defendant Logan's revised motion for summary judgment) Officer Flesher knew Thomas Logan in passing, having grown up in the same town and gone to the same schools, but years apart due to differences in age. (See Officer Flesher testimony, p. 24 – 25, attached as Exhibit F to defendant Logan's revised motion for summary judgment) As of February 15, 2009 Officer Arthur knew Thomas Logan was a police officer but had no social relationship with him. (See Officer William Arthur's testimony, p. 12 – 15, attached as Exhibit G to defendant Logan's motion for summary judgment)

At no time on February 15, 2009 did any of the codefendant officers ever identify defendant Logan as a police officer to plaintiff or in his presence. (Transcript of testimony of plaintiff Richard Matthews taken on January 19, 2012, p. 41, attached as Exhibit B to defendant Logan's revised motion for summary judgment) Plaintiff was not placed under arrest on February 15, 2009 by defendant Logan nor by any member of the Dickson City police

department. At no time on February 15, 2009 did plaintiff hear defendant Logan say anything to any of the codefendant police officers who actually arrested him. (Transcript of testimony of plaintiff Richard Matthews taken on January 19, 2012, p. 41 - 43, attached as Exhibit B to defendant Logan's revised motion for summary judgment)

Defendant Logan now moves this honorable court for the entry of summary judgment. Plaintiff has failed to come forward with any evidence that defendant Logan acted in any capacity other than that of a witness and the victim of an assault. In addition, other than appearing and testifying as a fact witness regarding the circumstances surrounding the bar fight, defendant Logan played no role in the arrest and subsequent criminal prosecution of the plaintiff.

## II.  SUMMARY JUDGMENT STANDARD

In deciding a Motion for Summary Judgment, this Court is governed by Rule 56(c) of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that summary judgment should be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any Affidavits, show no genuine issue as to any material fact. Rode v. Dellarciprete, 845 F.2d 1195, 1999 (3d Cir., 1988). In making this determination, the Court must draw all reasonable inferences in favor of the non-movant. Riegel Products Corp. v Meyer, 720 F.2d 303, 307 Note 2 (3d Cir., 1983) cert. denied 465 U.S. 1091 (1984). Whether a fact is "material" is determined by the substantive law defining the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. Anderson, 477 U.S. at 249. "The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must, as a matter of law, prevail over the other." Id.

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be discharged by showing that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries, C.O. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). When the non-moving party's evidence in opposition to a properly supported Motion for Summary Judgment is merely colorable, the Court may grant summary judgment. Anderson, 477 U.S. at 249-50. Further, when a non-moving party who bears the burden of proof at trial has failed to raise a disputed fact issue as to any essential element of his or her claim, summary judgment should be granted because "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23.

### III. ARGUMENT

#### A. DEFENDANT LOGAN WAS NOT A "STATE ACTOR"

Plaintiff seeks recovery against defendant Logan and asserts that the codefendant arresting officers "had a pre-existing relationship with Defendant Logan, due to their profession and were biased in Logan's favor and against Plaintiff all seeking to protect Logan by prosecuting Plaintiff." (Second Amended Comp at ¶32). In addition, plaintiff claims that defendant Logan provided false testimony at plaintiff's trial regarding the attack. (Second Amended Comp at ¶31) Nonetheless, plaintiff was found not guilty of the charges of assault and disorderly conduct. (Second Amended Comp at ¶30). Plaintiff's complaint sets forth three claims, only two of which could arguably be directed at moving defendant. Count I asserts a

civil rights claim for malicious prosecution. Count II, which does not apply to defendant Logan, asserts that the codefendants engaged in selective prosecution by choosing to prosecute him and not investigating, charging or prosecuting Logan for his involvement in the fight. Count III of the complaint asserts a pendant state law claim for malicious prosecution.

Under 42 U.S.C. § 1983, a private party may recover in an action against any person acting under color of state law who deprives the party of his or her constitutional rights. In order to succeed on a claim under § 1983, a plaintiff must demonstrate: (1) the violation of a right secured by the Constitution, and (2) that the deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). Accord, Collins v. Christie, 2007 U.S.Dist LEXIS 61579 (E.D.Pa. August 22, 2007). The viability of plaintiff's federal claim against moving defendant hinges on whether defendant Logan may be considered a "state actor" by virtue of his providing information to the codefendant officers regarding the assault.

To satisfy the state action requirement, a plaintiff must show that the defendant "used authority derived from the state in causing the alleged harm." Although police officers are undoubtedly state actors, see Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998), "a police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law." Barna v. City of Perth Amboy, 42 F.3d 809, 816 (3d Cir. 1994); see Screws v. United States, 325 U.S. 91, 111, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945); Pitchell v. Callan, 13 F.3d 545, 547-49 (2d Cir. 1994)  For example, an officer's presence at the scene of, and acquiescence in, a private repossession is not state action unless accompanied by affirmative intervention, aid, intimidation, or other use of power which converts him from a neutral third party to, in effect, an assistant of the repossessing party, see, e.g., Harvey, 421 F.3d

at 190-91; Barrett v. Harwood, 189 F.3d 297, 302-03 (2d Cir. 1999); Abbott, 164 F.3d at 146-47; Jones v. Gutschenritter, 909 F.2d 1208, 1213-14 (8th Cir. 1990); Booker v. City of Atlanta, 776 F.2d 272, 273-74 (11th Cir. 1985); United States v. Coleman, 628 F.2d 961, 964 (6th Cir. 1980); Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 513 (5th Cir. 1980). Accord, Mitchell v. Gieda, 215 Fed. Appx. 163 (3d Cir. 2007).

    The Supreme Court has held that "acts of officers in the ambit of their personal pursuits" are not actions taken under the color of law. Screws v. United States, 325 U.S. 91, 111, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945). The Third Circuit Court of Appeals has further clarified that "a police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law." Barna v. City of Perth Amboy, 42 F.3d 809, 816 (3d Cir. 1989). In Barna, the United States Court of Appeals for the Third Circuit analyzed the conduct of off-duty police officers who brandished their state-issued nightsticks during a purely personal dispute outside of their jurisdiction. Id. at 816. The Court of Appeals concluded that because the evidence indicated that the dispute arose out of the officers' familial and personal concerns, use of the state-issued nightstick did not amount to an assertion of official authority. Id. at 817-19. See Delcambre v. Delcambre, 635 F.2d 407, 408 (5th Cir. 1981) (holding that alleged assault by on-duty police chief at police station did not occur under color of state law because altercation with the plaintiff, defendant's sister-in-law, arose out of a personal dispute and defendant neither arrested nor threatened to arrest the plaintiff); see also D.T. v. Independent School Dist. No. 16, 894 F.2d 1176 (10th Cir.) (finding sexual molestation of students by public school teacher/coach that occurred on an excursion unconnected to school activities during school vacation period when teacher was not employed by the school district did not occur under color of state law), cert. denied, 498 U.S. 879, 112 L. Ed. 2d 172, 111 S. Ct. 213 (1990).

The Third Circuit found in Barna that an off-duty police officer who used his nightstick in a fight was not a state actor for purposes of § 1983, noting that courts generally require additional indicia of state authority to find that an officer acted under color of state law. Id. Courts in the Third Circuit have extended this line of reasoning and found that police officers, even when in uniform and on duty, were not acting under color of state law for purposes of § 1983, so long as the officer's actions were of a personal nature and the officer did not arrest, or attempt to arrest, the victim. See Halwani v. Galli, 2000 U.S. Dist. LEXIS 9684, *8 (E.D. Pa. July 13, 2000)(holding that there was no action under color of state law when uniformed, on-duty police officer threatened plaintiff's life); Johnson v. Hackett, 284 F.Supp. 933, 937 (E.D. Pa. 1968)( "It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law.") Accord, Stroby v. Egg Harbor Twp., 754 F. Supp. 2d 716 (D.C.N.J. 2010)

A relevant factor is whether the actions were taken as a result of official police concerns or because of interpersonal disputes. See Barna, 42 F.3d at 818 ("Here there was no evidence that the alleged assault occurred as a result of official police concerns; on the contrary, the evidence indicates that the assault arose out of the officer's familial and personal concerns.") (citing Delcambre v. Delcambre, 635 F.2d 407, 408 (5th Cir. 1981) (holding that alleged assault by on-duty police chief at police station did not occur under color of state law because altercation with the plaintiff, defendant's sister-in-law, arose out of a personal dispute and defendant neither arrested nor threatened to arrest the plaintiff)).

When a police officer becomes involved in his own personal disputes, the "officer's purely private acts which are not furthered by any actual or purposed state authority are not acts under the color of state law." Barna, 42 F.3d at 816-17.  On the other hand, off-duty police

officers who purport to exercise official authority will generally be found to have acted under color of state law. Manifestations of such pretended authority may include flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute involving others pursuant to a duty imposed by police department regulations. See, e.g., Rivera v. La Porte, 896 F.2d 691, 696 (2d Cir. 1990) (identification as a peace officer, arrest of plaintiff, and use of police car); Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423 (10th Cir. 1984) (flashing of police badge and identification as police officer working as security guard), vacated on other grounds, 474 U.S. 805 (1985), adhered to on remand, 796 F.2d 1307 (10th Cir.), cert. denied, 479 U.S. 884 (1986); Stengel v. Belcher, 522 F.2d 438, 441 (6th Cir. 1975), cert. dismissed, 429 U.S. 118 (1976) (intervening in barroom brawl).

In the case at bar Defendant Logan was clearly acting in a purely personal capacity at the time of the bar fight and the subsequent investigation by the Olyphant police department. Defendant Logan was not on active duty, not in uniform, and at no time ever identified himself as a police officer. It was the Olyphant officers who placed plaintiff under arrest not Logan. Runco's bar was outside the jurisdiction of defendant Logan's employer at the time – Dickson City – and neither defendant Logan nor the Borough of Dickson City had any involvement in plaintiff's arrest and criminal prosecution. Logan provided information to the investigating police officers from Olyphant as a private citizen/Vitim regarding the assault.

After being assaulted defendant Logan did call the police via 911. Even while doing so he did not identify himself as a police officer. Moreover, merely calling the police, furnishing information to the police, or communicating with a state official does not rise to the level of joint action necessary to transform a private entity into a state actor. See, e.g., Moore v. Marketplace Rest., Inc., 754 F.2d 1336, 1352-53 (7th Cir. 1985) (private entity who simply reported

customers to police not state actor); Benavidez v. Gunnell, 722 F.2d 615, 618 (10th Cir. 1983) (private entity who reported crime to state official not state actor); Butler v. Goldblatt Bros., Inc., 589 F.2d 323, 327 (7th Cir. 1979) (private entity who merely furnished information to police not state actor); Caswell v. BJ's Wholesale Co., 5 F. Supp. 2d 312, 318-19 (E.D. Pa. 1998) (private entity who reported possible crime to police not state actor); Dirocco v. Anderson, 655 F. Supp. 594, 598 (E.D. Pa. 1986) (private entity who merely assisted police in investigating suspected shoplifter not state actor). Accord, Cooper v. Muldoon, 2006 U.S. Dist. LEXIS 23388 (E.D.Pa. 2006)

     Defendant Logan's cooperation with the police in his capacity of "victim" is simply not the type of joint activity that would otherwise create private liability under § 1983. See, e.g., Fisk v. Letterman, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005) (Communications between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party into a state actor."); Benavidez v. Gunnell, 722 F.2d 615, 618 (10th Cir. 1983) ("mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § 1983"). Accord, Collins, 2007 U.S.Dist LEXIS 61579 (E.D.Pa. 2007).

     Plaintiff claims that his arrest was undertaken and motivated by malice by the defendants. Such a claim is odd given the fact that prior to the evening in question the plaintiff and defendant Logan did not know one another. Plaintiff has not come forward with any theory as to why defendant Logan would wrongfully accuse him of assaulting him. Moreover, regardless of the assault on defendant Logan's person, it is uncontested by plaintiff that he did bite Noreen Logan. While Plaintiff's second amended complaint claims that defendant Logan testify falsely at plaintiff's trial regarding the incident, the complaint fails to identify or delineate what testimony

was false or incorrect. Moreover, such an allegation - even if accepted - is still insufficient to transform defendant Logan into a state actor. See, Kahermanes v. Marchese, 361 F. Supp. 168, 171 (E.D. Pa. 1973) ("The deliberate giving of false information by an individual to a police officer to cause the arrest of another does not give rise to a cause of action under the Civil Rights Acts."); Annan-Yartey v. Honolulu Police Dep't, 475 F. Supp. 2d 1041 (D.Haw. 2007) (lying to police about the existence of a temporary restraining order causing plaintiff's arrest insufficient to transform defendant into state actor); Arnold v. Int'l. Bus. Machines Corp, 637 F.2d 1350, 1352 (9th Cir. 1981) (a person who supplies inaccurate information that leads to an arrest is not involved in joint activity with the state and, thus, not liable under § 1983); Moore v. Marketplace Restaurant, Inc., 754 F.2d 1336, 1340 (7th Cir. 1984) (providing false information to an arresting officer is not, by itself, sufficient to state a claim against that private party under § 1983).

     Defendant Logan's actions during the early morning hours of February 15, 2009 were undertaken in his personal capacity and completely unrelated to his position as a police officer with the Borough of Dickson City. Defendant Logan was present at Runco's bar with his wife for purely social reasons following their attendance at a Valentine's dinner dance. He was off-duty and, in fact, out on disability due to recent shoulder surgery. While the description of the fight which took place at Runco's varies from witness to witness, it is clear that plaintiff has not come forward with sufficient evidence to sustain his claim that defendant Logan's alleged misidentification of him as one of the individuals involved in the assault on him, or any of his other alleged actions, constitutes "state action" sufficient to permit a claim under §1983 against defendant Logan to proceed forward.

B.  PLAINTIFF HAS FAILED TO SET FORTH A VALID STATE LAW CLAIM FOR MALICIOUS PROSECUTION

With regards to the plaintiff's state law claim, In Count III of his Amended Complaint, Plaintiff purports to bring a pendent state law claim for malicious prosecution.  Defendant incorporates and joins in the arguments as set forth by codefendants.  In the case at bar the codefendants had probable cause to arrest and charge plaintiff based on his admitted biting of non-party Noreen Logan and based on Mrs. Logan's description of the incident to the arresting officers.  As such, the fact that plaintiff's description of his involvement (or lack thereof) in the assault upon moving defendant Logan differs from Logan's own description of the incident should not prevent the court from dismissing the claim outright.

Alternatively, even if the court should determine that factual issues remain regarding the state law claim, this honorable court should decline to hear that claim.  Jurisdiction of federal courts over pendant state law claims is governed by 28 U.S.C. §1367, which provides that:

> In any civil action in which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

The doctrine of pendent jurisdiction is a means for a party to try in one judicial proceeding all claims arising from a "common nucleus of operative facts" where to do so would promote convenience and sound judicial administration. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966); Tully v. Mott Supermarkets, Inc., 540 F.2d 187, 195-6 (3d Cir. 1976).  The power of a federal court to exercise pendent jurisdiction over state law claims "requires, at a minimum, a federal claim of sufficient substance to confer subject matter jurisdiction upon the court." Tully, 540 F.2d at 196.  If the federal claims in an action are "subject to dismissal under

F.R.C.P. 12(b)(6) or could be disposed of on a motion for summary judgment under F.R.C.P. 56, then the court should ordinarily refrain from exercising [pendent] jurisdiction in the absence of extraordinary circumstances." <u>Tully</u>, 540 F.2d at 196.

Accordingly, if a district court dismisses all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over a pendent state claim. Thus, because the federal claims in the within action should be dismissed, this court should decline to exercise supplemental jurisdiction and dismiss Count III of Plaintiff's Second Amended Complaint as well.

## IV.   CONCLUSION

For all the foregoing reasons, defendant Logan requests that this honorable court grant his motion for summary judgment and dismiss all claims raised by plaintiff against him.

                      Respectfully Submitted,

                      **MARSHALL, DENNEHEY, WARNER,**
                      **COLEMAN & GOGGIN**

Date: May 7, 2013          By:    */s/ Paul G. Lees*
                                        Paul G. Lees, Esquire
                                        Attorney for Defendant
                                        Thomas Logan

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing Brief in Support of Defendant Logan's Revised Motion for Summary Judgment was electronically filed with the Court on May 7, 2013 and is available for viewing and downloading from the ECF System. The following counsel of record was served via electronic notification:

Matthew B. Weisberg, Esquire
**Weisberg Law, P.C.**
7 S. Morton Ave.
Morton, PA 19070-7722
Counsel for Plaintiff Richard Matthews

Anthony R. Sherr, Esquire
**MAYERS, MENNIES & SHERR, LLP**
3031 Walton Road, Building A
Suite 330, P.O. Box 1547
Blue Bell, PA 19422-0440
Counsel for Olyphant Police Department, Borough
of Olyphant, Officer Arthur, Officer Borowicz and Officer Flesher


                                        By:   */s/ Paul G. Lees*
                                                    Paul G. Lees, Esquire