### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Richard Matthews | : | |
| Plaintiff, | : | CIVIL ACTION NO.:  10-cv-1215 |
| v. | : | |
| | : | |
| Runco's Tavern & Grill, Inc., et al | : | |
| | : | JURY OF TWELVE (12) JURORS DEMANDED |
| Defendants | : | |

### PLAINTIFF, RICHARD MATTHEWS' OMNIBUS BRIEF IN OPPOSITION TO ALL DEFENDANTS' REVISED MOTIONS FOR SUMMARY JUDGMENT

**I.    Introduction**

Plaintiff, Richard Matthews by and through his undersigned attorneys, hereby files his Brief in Support of his Opposition to the Revised Motion for Summary Judgment filed by Defendant, Thomas J. Logan ("Logan"), and the Second Motion for Summary Judgment filed by Defendants, Officers Arthur, Flesher and Borowicz ("Defendant Officers").

Plaintiff hereby opposes the dismissal of his Fourth Amendment claims for wrongful arrest and malicious prosecution, and his state law claim for malicious prosecution.

**II.    Statement of Facts**

On February 15, 2009, Plaintiff, Richard Matthews ("Matthews") was at Runco's Bar & Grill, Inc. ("Runco's") located at 120 Lincoln Street, Olyphant, PA.  See Second Amended Complaint at ¶ 12.  On the night of the incident, Matthews was inside Runco's Bar when Defendant Thomas Logan ("Logan") and non-party, Brian Doughton began fighting inside the bar which spilled outside.  [Exh. H, pp. 42-43.]  Defendant Logan grabbed Brian Doughton by the neck with both hands.  [Exh. B, p 50.]  [Exh. I, pp. 17-18.]  As the two men were grappling they both shuffled out the front door of Runco's and out onto the sidewalk.  [Exh. C, p. 63.]

Logan had instigated a fight and argument with Brian Doughton earlier in the night, which was subsequently broken up by Robert Doughton.  [Exh. C, p. 58.]  Once outside, Brian Doughton was on top of Logan, and Logan on top of Brian Doughton wrestling and punching each other.  [Exh. C p. 64.]  [Exh. J, p. 15.]  At the time of the incident, Brian Doughton had punched Defendant Logan in the face several times and Logan was knocked down by Brian Doughton and hit face first into the sidewalk.  [Exh. H, p. 33.]

At no time did Logan aggravate his pre-existing shoulder injury as a result of the altercation at Runco's Tavern.  [Exh. F, p. 31.]  Although, Brian Doughton was trying to jostle Logan's shoulder and was heard saying, "how's your arm feel now Logan".  [Exh. F, p. 34-35.] At no time did Matthews ever say anything to Logan about his shoulder.  [Exh. F, p. 38.] Matthews attempted to break up the fight, along with other individuals at the scene.  [Exh. C, p. 65.]  Thomas Logan attempted to punch Richard Matthews on the date of the incident without reason or justification.  [Exh. C, p. 68.]  At some point Thomas Logan's wife jumped on Matthews' back.  At the time that Noreen Logan jumped on Plaintiff's back she had bit his right hand and his finger which dropped him to his knee.  [Exh. C, p. 69.]  After Matthews had bitten Noreen Logan in an effort to get her fingers out of his mouth and out of his face, Plaintiff Noreen Logan bit Matthews on the hand causing a large cut which required medical attention.  [Exh. C, p. 70.]  At no time did Matthews punch anyone.  [Exh. C, p. 69.]  [Exh. H, p. 44.]

After the incident, Matthews went back inside the bar to get a towel to treat the bite wound on his hand because it was "pouring blood".  [Exh. C, Matthews p. 70.]  Eventually other individuals present at the scene broke up the fight between Logan and Doughton. After the initial altercation, Defendant Logan then began screaming in the street yelling and cursing at other individuals located at the scene and was completely out of control.  [Exh. A.]

[Exh. E, p. 16.]  [Exh. K, p. 20.]  [Exh. L, p. 13.]  Logan immediately telephoned 911 and advised the dispatcher that there was a "riot" at Runco's and to dispatch all police cars in the area.  [Exh. A.] [Exh. B, p. 65.]  At the time of the incident, Defendant Logan attempted to punch Marjorie Runco, and told her "F-U bitch I will own this bar".  [Exh. A.]

Defendants Arthur, Borowicz and Flesher were dispatched to Runco's Tavern.  Upon their arrival, they immediately talked with Defendant Logan who instructed them to make arrests and advised that their jobs were in jeopardy if they refused to do what he said.  There were numerous non-party witnesses who offered to give statements to the police as to what happened, but Officer Arthur was not discussing the fight with Marjorie Runco, who advised that Arthur did not want to speak with her about the incident.  [Exh. A.]  [Exh. G, p. 12.]  Marjorie Runco testified that Matthews was not even involved in the incident, yet the Police Officer Defendants did not want to hear what she had to say about the incident.  [Exh. B, p.74.]  [Exh. B, pp. 69, 97.]

At the scene of the incident, Marjorie Runco provided exculpatory information concerning Plaintiff.  [Exh. A.]  Mrs. Runco specifically advised Defendants Flesher and Arthur that she never saw Plaintiff hit or strike Logan.  Further, Runco advised Defendants Arthur and Flesher that Defendant Logan had instigated the entire fight and further, she explained to Defendant Flesher at Defendant Logan attempted to punch her.  [Exh. A.]  [Exh. B, pp. 68, 74.]  Mrs. Runco stated that Officer Arthur cut her off, ignored her statement, and refused to listen to her.  [Exh. A.]  [Exh. B, p. 88.]  [Exh. G p. 12.]  In addition, Defendant Logan was screaming and dictating which officer should get where, and Marjorie Runco thought it was strange that Defendant Logan was dictating where the police officers should go to investigate.  [Exh. B, p. 68.]  Defendant Logan instigated the entire event and fabricated his version of events to the

Police Defendants, yet the Police Officer dismissed what she was saying at the scene of the incident.  [Exh. B, p. 27.]

Incredibly, while the officers were speaking with Marjorie Runco, Defendant Logan is still in the middle of the street, and he charges down the street through the officers and start swinging at Brian Doughton.  [Exh. B, p. 71.]  Defendants Borowicz and Flesher interviewed Plaintiff while they took Plaintiff to the hospital for medical attention, and Plaintiff calmly explained to Borowicz and Flesher what had happened, that he had attempted to break up the fight.  [Exh. C, p. 75.]  [Exh. M,  pp. 43-44.]  Plaintiff explained to Defendants Borowicz and Flesher how he had come to bite Noreen Logan's finger (he was trying to get her finger out of his mouth), and how his finger was bitten as well.  [Exh. C, p. 87.]  [Exh. J, p. 16.]

Officer Flesher and Borowicz took Plaintiff to CMC Hospital, prior to taking him to jail where he was treated for a bite to his finger.  [Exh. C, p. 75.]  Plaintiff volunteered to give the officers a written statement after they had read his Miranda rights prepare the written statement while in the hospital, however Flesher never actually read Matthews' written statement.  [Exh. C, p. 75.]  [Exh. E, p. 39.]  After receiving treatment at the hospital, Matthews was taken to jail for approximately six hours.  [Exh. C, p. 76.]  Defendant Borowicz plainly testified that he did not consider Matthews' written statement in any way prior to charging him with aggravated assault. [Exh. M, pp. 54-55.]

During the incident and afterwards, Richard Matthews was not visibly intoxicated.  [Exh. M, pp. 43-44.]  [Exh. G, p. 37.]  However, Thomas Logan was intoxicated at the time of the incident.  [Exh. G, p. 28.]  [Exh. E, p. 41.]  Exh. G, p. 42.]  At the scene of the incident it was very apparent that Defendant Logan was directing the police telling them that he had been attacked.  [Exh. H, p. 41.]

4

Defendant Logan knew Officers Arthur, Flesher and Borowicz prior to the night of February 15, 2009.  [Exh. F, p. 14.]  [Exh. G, p. 13.]  Flesher and Logan grew up in the same town, and their families grew up together and were acquaintances.  [Exh. E, p. 30.]  And, Defendant Logan identified himself to the 911 dispatcher while he was requesting Olyphant Police to arrive at Runco's Tavern.  [Exh. F, p. 43.]  Thomas Logan was never arrested for his role in the incident.  Yet, Plaintiff, Richard Matthews was charged with assault, aggravated assault and disorderly conduct [Exh. N.]

According to Arthur, The decision to charge Richard Matthews with an aggravated assault versus a simple assault was due to the seriousness of the injuries to Thomas Logan, specifically, the "injury" to Logan's shoulder.  [Exh. G, p. 56.]  Arthur testified that he believed that someone had made a comment about Logan's shoulder being damaged, and that Matthews had made a comment to Logan during the altercation about attempting to injure his shoulder.  [Exh. G, p. 59.]  But, Thomas Logan never said to the police either verbally or from his written statement that Richard Matthews tried to hurt his shoulder.  [Exh.F, p. 53.]  Matthews made no such comment to Tom Logan.  On the night of the incident, Defendant Logan was not wearing a sling or any other medical implement or device with regards to a shoulder injury that he sustained in December 2008.  [Exh. F, p. 10-11.]  In fact Defendant Logan and Plaintiff only met for the very first time on the night of the incident, shook hands and were introduced to each other.  [Exh. C p. 42.]  At no time did Plaintiff have any knowledge that Defendant Tom Logan had a shoulder surgery.  [Id.]

The day after the incident, Defendant Logan and his wife Noreen went to the Olyphant Police Department and a provided statement to Officer Arthur.  [Exh. J, p. 28.]  [Exh. F, p.53.]  Critically, the day following the incident, Defendant Logan had an MRI done on his shoulder

which showed no additional damage to a prior shoulder injury.  [Exh. F, pp. 51-53.]  Logan did not have any fractured ribs as a result of the fight, he did not receive any stitches for a cut to his lip.  [Id.]  Logan had seven stitches to a cut under his left eye.  [Exh. F, pp. 51-52.]  At no time did Officer Flesher make any attempt to obtain statements concerning the incident with people who he knew to be witnesses of the fight.  [Exh. E, pp. 36.]

Officer Flesher signed an affidavit of probable cause without direct knowledge of the contents set forth within it and did not provide any facts set forth in the affidavit.  [Exh. E, pp. 46-48.]  The Defendant officers never actually witnessed anyone fighting.  [Exh. M, p. 16.] [Exh. G, p. 19.]  And, at no time during the incident did Richard Matthews ever have a weapon, and no one has ever accused Matthews of having a weapon.  The Defendant Police Officers never had any conversation with each other about whether to charge Defendant, Thomas Logan with a crime.  [Exh. M, p. 64.]  Borowicz personally reviewed the written statement of Marjorie Runco prior to the Plaintiff's trial.  Nonetheless, he continued the prosecution of the charges against Richard Matthews.  [Exh. M, p. 68.]

Arthur knew that Plaintiff had been bitten during the incident as well.  And further, Arthur testified that he believed that Plaintiff had been bitten by Noreen Logan.  [Exh. G, p. 38.] On October 21, 2009 Plaintiff was found not guilty of the assault and disorderly conduct counts, and further the aggravated assault count filed against Plaintiff was nolle prossed.

Defendant Logan has been terminated from his position as a police officer at Dickson City.  [Exh. J, p. 31.]  On November 28, 2011 Thomas Logan was fired by a unanimous vote of Borough Council for "neglect or violation of his judicial duties and conduct unbecoming an officer pursuant to the Borough Code."  [Exh. O.]  On November 21, 2011 Logan had been suspended by the Borough three times from his job as a police officer, the last time indefinitely,

and Logan was charged by the State Game Commission with shooting a deer illegally.  In

December 2011, Pennsylvania State Police charged Defendant Logan with insurance fraud for

allegedly filing a fraudulent claim after a 2009 fire at a hunting cabin in Wayne County. [Exh.

O.]  On or about April 27, 2012, Logan pled guilty to insurance fraud.  [Exh. P.]

## III.    Legal Standard for Summary Judgment

Federal Rules of Civil Procedure 56(c) provides for summary judgment when "there is

not genuine issue as to any material fact and … the moving party is entitled to judgment as a

matter of law."  An issue is genuine if "the evidence is such that a reasonable jury could return a

verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Anderson, the court explained that the judge's role with adjudicating a motion for summary

judgment "is not himself to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial."  Id., at 249.  In making this determination, a

court is to draw all reasonable inferences in favor of the non-moving party.  See Berner Int'l

Corp. v. Mars Sales Co., 987 F.2d 975, 978 (3d. Cir. 1993).  In other words, Rule 56(c)

"mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against the party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV    Legal Argument

A.    Defendants, Olyphant Officers, William Arthur, Joseph Flesher and Brian Borowicz Are
      All Subject to Liability Under 42 U.S.C. Section 1983, Arising Out of the Malicious
      Arrest of the Plaintiff.

To prevail in a Section 1983 action, a plaintiff must establish (1) that the conduct

constituted state action or action committed while acting under color of law and (2) that the

conduct deprived an individual of rights, privileges, or immunities secured by the constitution or laws of the United States. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1264 (3d Cir.1994); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1142 (3d Cir.1990). 42 U.C.S. § 1983 does not create substantive rights. Rather, it provides an avenue of recovery for the deprivation of established constitutional or statutory rights. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause. Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995). Probable cause to arrest exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. Id. at 483; United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir.1990) (citation omitted), cert. denied, 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991); United States v. Massac, 867 F.2d 174, 175 (3d Cir.1989).

A police officer who arrests an individual without probable cause may be liable for damages in a civil rights suit. Id.; Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994). However, police officers, like other governmental officials, are protected from liability for civil damages where their conduct in performing a discretionary function does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Orsatti, 71 F.3d at 483.

For Fourth Amendment purposes, the issue is not whether the information on which police officers base their arrest resulted from a professionally executed investigation; rather, the issue is whether that information would warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. Orsatti, 71 F.3d at 484. The focus

is upon the information the Detectives had available to them at the time, not on whether the information resulted from exemplary police work.  Orsatti, 71 F.3d at 484; see also Barna, 42 F.3d at 819.

Here, Defendants Arthur, Borowicz and Flesher unlawfully arrested Plaintiff in violation of his 4th Amendment right guaranteeing Plaintiff the right to be free from unreasonable seizures.  Maples v. City of Atlantic City, 2008 WL 2446825 (D.N.J.,2008).  Plaintiff was unlawfully arrested.  An arrest is unlawful and, thus, actionable if it is effectuated without probable cause.  Patzig v. O'Neil, 577 F.2d 841, 848 (3d Cir.1978).  Probable cause exists when the facts are such that a reasonably prudent person would believe that a crime had been committed.  Gerstein v. Pugh, 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).  Thus, the question this Court must determine is whether the facts available to Defendants Arthur, Borowicz and Flesher, at the time of arrest would warrant a reasonably prudent person to believe that Plaintiff had committed the violations he was charged with.  Beck v. State of Ohio, 379 U.S. 89, 98, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) ("[w]hen the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed") (quoting Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)).

In this case, there are no facts within the knowledge of Defendants, Arthur, Borowicz and Flesher which would suggest in any way that Matthews committed an aggravated assault.  Arthur testified that the decision to charge Matthews with aggravated assault was based upon the aggravation of Defendant Logan's shoulder injury, and the statement that "someone" made during the incident as to "how does your shoulder feel now?"  [Exh. G, p. 59.]  Arthur testified

that Matthews said, "how does your shoulder feel now," while jostling Logan's shoulder.  [Exh. G, pp. 56, 59.]  Logan never told Arthur that Matthews ever made the comment.  [Exh. F. pp. 34-35.]  The undisputed facts of the case demonstrate that it was Brian Doughton who made that comment, not Plaintiff.  [Id.]  Further, the undisputed facts show that Thomas Logan never suggested that Matthews made any comment to him about his shoulder and that it was impossible for Matthews to have any knowledge about Logan's pre-existing shoulder injury.  [Exh. F, p. 53.]  [Exh. C, p. 42.]  Matthews had just met Logan on the date of the incident, and had no knowledge that Logan had a pre-existing shoulder injury.  [Exh. E, p. 42.]

In addition, Borowicz and Flesher testified that they ignored the statements of both Matthews and Marjorie Runco, which both contained exculpatory information.  [Exh. E, p. 36.] [Exh. M, pp. 54-55.]  Marjorie Runco testified that she attempted to speak with Arthur on the night of the incident about what she had witnessed and Arthur cut her off and did not want to hear what she had to say, despite telling Arthur that Logan had attempted to punch her.  [Exh. A.] [Exh. G, p. 12.]  The Defendant officers arrived at the scene, spoke with Logan and his wife and immediately made a decision to arrest Matthews for aggravated assault.  [Exh. A.]

If testimonies of unbiased, third-party witnesses including Marjorie Runco, are to be believed, Defendant Logan (despite being drunken and screaming in the middle of the street) was judged by Defendant's Officers to be more credible than Plaintiff, who everyone agrees was sober at the time of the incident.  There is no way to interpret that information other than to infer that Plaintiff was arrested because Logan was complaining about him and Logan was a Police Officer.  In addition, none of the officers witnessed the altercation.  Mazloum v. District of Columbia Metropolitan Police Dept., 576 F.Supp.2d 25 (D.D.C.2008).  (A jury could rationally have concluded that off-duty police officers were not justified in their decision to detain and

arrest nightclub patron because they lacked probable cause to do so; none of officers witnessed start of altercation between patron and club bouncer, or saw patron commit crime or engage in any unlawful behavior, and when officers became involved, patron was pinned to ground below bouncer, which belied conclusion that patron presented any immediate threat to officers or other patrons.)  Here, the first time that Defendants found Matthews, he was seated at the bar with a towel on his hand treating a serious bite wound.  [Exh. C, pp. 70, 75.]  [Exh. M, pp. 43-44.]  The only information Police Defendants considered were the drunken rantings of Logan and his wife, who, it is undisputed, bit the Plaintiff's hand.  It is clear that Defendants violated Plaintiff's civil rights by arresting him without probable cause.

> B.  Material issues of fact exist, as well as reasonable inferences which may be drawn from those facts, relating to whether Defendants, Arthur, Borowicz and Flesher perpetrated a malicious prosecution, false arrest and false imprisonment of Plaintiff.

The determination of whether an officer had probable cause to arrest a citizen involves a mixed question of fact (the historical events that occurred) and law (whether the facts, viewed from the standpoint of an objectively reasonable officer, amounts to probable cause).  Gardenhire v. Schubert, 205 F.3d 303 (6th Cir. 2000).  In general, the existence of probable cause in a § 1983 action is a jury question.  Id.; Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782 (3rd Cir. 2000). The common law presumption raised by a magistrate's prior finding that probable cause exists does not apply to § 1983 actions.  Merkle, supra.  Conflicting statements, by themselves, create a genuine dispute of material fact and of credibility that can only be resolved by the jury.  Wallis by and through Wallis v. Spencer, 193 F.3d 1054 (9th Cir. 1999).

On summary judgment on claim that a police officer knowingly or recklessly gave false information to obtain an arrest warrant, Court must disregard all properly contested statements in the affidavit, include relevant exculpatory evidence left out of the affidavit, and then determine

whether the warrant would establish probable cause without the allegedly false information. Freeman v. County of Bexar, 210 F.3d 550 (5th Cir. 2000). Plaintiff must then demonstrate an issue of material fact as to whether a reasonably competent officer, possessing all the information defendants had when the affidavit was sworn to, could have concluded that a warrant should issue. Id. Court must look at the totality of the circumstances as they appear to defendants at the time to determine whether probable cause exists. Id.

A Fourth Amendment violation may be established if a plaintiff can show that officers intentionally or recklessly omitted material, exculpatory facts from information presented to a magistrate. Burke v. Town of Walpole, 405 F.3d 66 (1st Cir. 2005). Recklessness may be inferred where the omitted information was critical to the probable cause determination. The law has clearly established that a police officer has a constitutional duty to disclose exculpatory evidence in seeking warrants based on probable cause, and an officer who failed to do so was not entitled to qualified immunity. Id.

An officer is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing alone) suggests that probable cause exists. Court must analyze the weight of the all evidence in determining whether probable cause to arrest was present. Kuehl v. Burtis, 173 F.3d 646 (C.A.8 1999). Officer was not entitled to qualified immunity where he ignored plainly exculpatory evidence where there was no evidence of exigent circumstances. Id.

At best, Defendants, Arthur, Borowicz and Flesher recklessly disregarded the facts within their knowledge when they arrested Plaintiff and charged him with aggravated assault, or, at worst, fabricated evidence by stating that Matthews had made a comment to Logan about his shoulder. It is clear that the written statement of the Plaintiff and the written statement of

Marjorie Runco were disregarded by Defendants' Officers.  [Exh. B, pp. 69, 74, 97.]  Further, the Defendants Officers completely ignored the information that Marjorie Runco was attempting to provide to them at the scene of the incident.  [Exh. A.]  No other evidence was utilized by Defendants and no other investigation was performed.  The information disregarded by Defendants: 1) that Plaintiff had nothing to do with the incident, 2) that Logan was the aggressor, 3) that Plaintiff had sustained a serious bite wound to his hand from Noreen Logan requiring a trip to the hospital, and 4) that Logan's injuries in no way gave rise to a charge of aggravated assault against Plaintiff.  [Exh. A.]  [Exh. B, pp. 69, 74, 97.]  [Exh. C. pp. 70, 75.]

There is also evidence that Defendants were motivated by malice, a racial or some other bad intention when they arrested Plaintiff.  It is uncontested that at the time of the incident, Defendants Arthur, Borowicz and Flesher all knew that Defendant Logan was a police officer and had assisted Arthur and Borowicz in the past with backup on police calls.  Arthur clearly testified that Defendant Logan directed him to arrest Plaintiff, and it is further undisputed that the only individuals at the scene of the incident who Defendants spoke with were Logan and his wife, despite the fact that Logan was intoxicated and screaming in the middle of the street.  [Exh. A.]  [Exh. B, p. 68.]  [Exh. F, pp. 14, 43.]

      C.      <u>The Olyphant Officers Are Liable to Plaintiff for Selective Prosecution.</u>

In order to establish a claim of selective prosecution, a plaintiff must show that similarly situated persons have not been prosecuted and that the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor, or that the prosecution was intended to prevent his exercise of a fundamental right.  <u>Crane v. Cumberland County, Pa.</u>, 64 Fed. Appx. 838, 840 (3rd Cir. 2003), (citing <u>United States v. Schoolcraft</u>, 879 F.2d 64, 68 (3rd Cir.1989)).

Even if it can be established that Plaintiff had some culpability for the fight (which is denied) and injuries to Logan, there is ample evidence and facts set forth above to give rise to a selective prosecution claim.  There is no adequate explanation as to why the Police Officer Defendants failed to arrest or otherwise detain Logan and/or his wife, Noreen Logan , as a result of the fight, other than the inference that because Logan was a Police Officer.  All of the evidence in this case indicates that Logan was the aggressor in the fight and, more importantly, Noreen Logan advised the Police Officer Defendants at the scene of the incident that she had bitten Plaintiff's hand.  [Exh. J, p. 16.]  There is ample evidence to infer that the arbitrary factor for the selective prosecution of the Plaintiff was because the Plaintiff was not a police officer, unlike Logan who had started the altercation, was drunk and intoxicated, was screaming in the middle of the street, and his wife, who openly admitted to the Police Defendants that she had bitten the Plaintiff.  [Exh. A.]  [Exh. G, pp. 37-38.]  [Exh. M, pp. 43-44.]

     D.     <u>Defendant Logan was acting under the color of state law.</u>

The central issue in determining whether a person has acted under color of state law is whether the alleged infringement of federal rights is fairly attributable to the State .  <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982).  The "under color of state law" requirement of § 1983 is treated the same as the "state action" requirement of the Fourteenth Amendment.  <u>Lugar</u>, 457 U.S. at 928.  The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains.  <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1982).

The Third Circuit has clarified when an off-duty police officer acts under the color of state law in committing certain actions. In <u>Barna v. City of Perth Amboy</u>, two off-duty police officers who assaulted the plaintiff, were not found to be acting under color of state law,

although one of the officers used his police-issue nightstick. 42 F.3d 809, 818 (3d Cir. 1994).

The plaintiff in Barna knew that they were police officers and had stated, "[l]ook you guys are

out of your jurisdiction ... [j]ust get out of here, go home, this is none of your concern," to which

one of the officers replied, "Jurisdiction? I'll show you jurisdiction."  Id. at 813.  However, the

ensuing fight between Barna and the officers, even with the use of the police-issue nightstick,

was not sufficient to support a finding that they acted under color of state law because the

officers committed "purely private acts which [were] not furthered by any actual or purported

state authority."  Id. at 816.

Thus, courts have found that the nature of the act taken by the off-duty police officer is

crucial to determining whether the officer has acted with police authority.  See Johnson v.

Hackett, 284 F.Supp. 933, 937 (E.D.Pa.1968).

In contrast, officers can be acting under the color of state law if they "purport" to be

acting with police authority.  See Griffin v. Maryland, 378 U.S. 130, 135 (1964). Some

manifestations of such pretended authority include: "flashing a badge, identifying oneself as a

police officer, placing an individual under arrest, or intervening in a dispute involving others

pursuant to a duty imposed by police department regulations." (emphasis added),  Barna, 42 F.3d

at 816.  Courts have found that an off-duty police officer will be acting under color of law if the

nature of the act performed is consistent with actions taken by a police officer. See, e.g., Rivera

v. La Porte, 896 F.2d 691, 696 (2d Cir.1990) (off-duty officer who identified himself as a police

officer and subsequently arrested the plaintiff after a private dispute acted under color of law).

In the instant matter, Logan identified himself as a Police Officer when he called the

Police Defendants to the scene.  [Exh. F, p. 43.]  The other Defendant Police Officers knew

Logan to be a police officer, and then Logan began directing the other Police Officer Defendants

to arrest Brian Doughton as well as the Plaintiff, which Marjorie Runco found to be very bizarre. [Exh. B, p. 68.]  [Exh. A.]  [Exh. F, p. 14.]  There is more than a mere scintilla of evidence to defeat summary judgment, here on the issue of whether Logan was acting under color of state law.  The conduct of all Defendants was under the color of state law and violated the civil rights of the Plaintiff.

**V.      Conclusion**

For the reasons set forth above Plaintiff, Richard Matthews, respectfully requests this Honorable Court deny the police Officer Defendants' Second Motion for Summary Judgment and Defendant Logan's revised motion for summary judgment.

**WEISBERG LAW, P.C.**

/s/ Graham F. Baird
Matthew B. Weisberg, Esquire
Graham F. Baird, Esquire
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Richard Matthews | : | |
| Plaintiff, | : | CIVIL ACTION NO.:  10-cv-1215 |
| v. | : | |
| | : | |
| Runco's Tavern & Grill, Inc., et al | : | |
| | : JURY OF TWELVE (12) JURORS DEMANDED |
| Defendants | : | |

**CERTIFICATE OF SERVICE**

I, Graham F. Baird, Esquire, hereby certify that on this 28th day of May, 2013, a true and correct copy of the foregoing Plaintiff, Richard Matthews' Omnibus Brief in Opposition to all Defendants' Motion for Summary Judgment was served via ECF upon the following parties:

Anthony R. Sherr, Esq.
Mayers, Mennies & Sherr, LLP
3031 Walton Road
Building A, Suite 330
P.O. Box 1547
Blue Bell, PA 19422-0440

Paul Gregory Lees, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
1495 Valley Center Parkway
Suite 350
Bethlehem, PA 18017-2342


**WEISBERG LAW, P.C.**


/s/ Graham F. Baird
Matthew B. Weisberg, Esquire
Graham F. Baird, Esquire
Attorneys for Plaintiff