IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD MATTHEWS, | : |
| Plaintiff, | : |
| | : 3:10-CV-01215 |
| v. | : |
| | : (JUDGE MARIANI) |
| RUNCO'S TAVERN & GRILL, INC, et al., | : |
| Defendants. | : |

## MEMORANDUM OPINION

### I.  Procedural History

The background of this Opinion is as follows. On May 7, 2013, Defendants Police Officers William Arthur, Brian Borowicz, and Joseph Flesher, as well as their Co-Defendant Thomas Logan, filed Motions for Summary Judgment in the above-captioned civil rights action. (*See* Doc. 77 (Arthur, Borowicz, and Flesher); Doc. 81 (Logan).) On August 5, 2013, this Court issued an Opinion (Doc. 92) and an Order (Doc. 93) denying the Motions. On August 15, Defendants Arthur, Borowicz, and Flesher filed a Motion for Reconsideration (Doc. 95). That latter Motion is presently before the Court.

The facts underlying this case were stated at length in the Court's August 5 Opinion and need not be restated here. (For the factual background, *see* Doc. 92 at 2-

9.) Defendants, however, only move for the Court to reconsider its Opinion as it pertains to three issues therein. These issues are:

1. That the Court should have provided a ruling on the qualified immunity of the police officer Defendants (*see* Defs.' Mem. of Law in Supp. of their Mot. for Recons., Doc. 96, at 4);

2. That the Court should have denied Plaintiff's selective prosecution claim rather than construe it as a selective enforcement claim, (*see id.* at 7); and

3. That the Court should have provided a ruling on the absolute immunity of the police officers for some unspecified testimony they gave as part of "their participation in the judicial process," (*see id.* at 10).

As relief, the Defendants request that they be "dismiss[ed] from this case with prejudice." (*Id.* at 11.)

## II. **Standards Governing Motion for Reconsideration**

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). A motion for reconsideration is permitted only on one of three grounds: (1) there is an intervening change in the controlling law; (2) new evidence becomes available; or (3) there is a need to correct clear error of law or fact or to prevent manifest injustice. *See Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013) (quoting

*Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)). Moreover, "motions for reconsideration should not be used to put forward arguments which the movant . . . could have made but neglected to make before judgment." *United States v. Jasin*, 292 F. Supp. 2d 670, 677 (E.D. Pa. 2003) (internal quotation marks and alterations omitted) (quoting *Reich v. Compton*, 834 F. Supp. 2d 753, 755 (E.D. Pa. 1993) (*rev'd in part and aff'd in part on other grounds*, 57 F.3d 270 (3d Cir. 1995)).

### III. Analysis

#### a. Qualified and Absolute Immunity

Grounds 1 and 3 of Defendants' Motion for Reconsideration argue that the Court committed a "manifest injustice" when it neglected to consider the qualified or absolute immunity of the police officer defendants, both in their conduct at the scene of Plaintiff's arrest and at subsequent judicial proceedings. (*See* Defs.' Mot. for Recons., Doc. 95 at ¶¶ 4-5 (qualified immunity); *id.* at ¶¶ 19, 22-23 (absolute immunity).)

Defendants first claimed that these issues were pled "in the Amended Second Motion for Summary Judgment." (*See id.* at ¶¶ 4, 19). However, upon review of Defendants' Amended Second Motion for Summary Judgment, the Court could find no mention of either qualified or absolute immunity. (*Cf. generally* Defs. Arthur, Borowicz, and Flesher's Am. Second Mot. for Summ. J., Doc. 77.) The Court therefore issued an ordering directing the Defendants to cite the specific language in their Amended Second

Motion where they raised the issues. (See Doc. 101.) Defendants replied by citing language from other filings. (See Doc. 102.) The Court considered this nonresponsive and issued a second order renewing its direction to cite to specific language in the Amended Second Motion. (See Doc. 103.) Finally, Defendants' counsel submitted a letter admitting that, despite their contrary representations to this Court, qualified and absolute immunity were not pled in their Motion. (See Doc. 105.) Defendants' counsel stated, "We were aware at the time that we wrote, and I signed, the Motion for Reconsideration that qualified and absolute immunity were only raised during the summary judgment process, in our Reply Brief." (Id.)

Defendants' admission is significant. In ruling on a motion, "a district court need not address issues raised for the first time in a reply brief." Dreyer v. Sheaffer, 2009 WL 917829, at *3 (M.D. Pa. 2009). That is because "[a] reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues." United States v. Martin, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006) (collecting cases). Because, as demonstrated by Defendants' own admission—which is compelled by a review of the record—Defendants never raised these issues until they submitted their reply brief, the Court was under no obligation to address them.

4

However, Defendants intimate that the issues of qualified and absolute immunity were properly raised "in response" to Plaintiff's Omnibus Brief in Opposition to the Motions for Summary Judgment. (*See* Doc. 102 at 1.) This argument nonetheless fails for two reasons.

First, absolute immunity is not mentioned in Plaintiff's Brief at all. Nor does that Brief even make reference to testimony that could implicate absolute immunity. (*Cf. generally* Pl.'s Omnibus Br. in Opp. to All Defs.' Revised Motions for Summ. J., Doc. 84.) Thus, though Defendants claim that they "raised the issue of absolute immunity in their Reply Memorandum . . . in an abundance of caution, specifically in response to Plaintiff's claims in his Omnibus Brief in Opposition . . . which referenced the testimony of the Officers, particularly Officer Arthur," (Doc. 102 at 1), they, again, misstate the record. The only references to "testimony" in Plaintiff's Brief in Opposition are to deposition testimony in the present civil case, which could not plausibly be construed to form a basis for liability. Clearly, Plaintiff only references Defendants' deposition testimony in an attempt to establish certain facts, for instance, whether Borowicz and Flesher ignored witness testimony at the scene of the arrest, (*see* Doc. 84 at 10), whether Logan directed Arthur to arrest Plaintiff, (*see id.* at 13), or whether Arthur heard a comment about Logan's shoulder being damaged, (*see id.* at 5). Merely using the word "testimony" in an unrelated context does not open the floodgates for a full discussion of absolute immunity

in a reply brief. Under the facts of this case, the only way that absolute immunity could have any relevance would be if Plaintiff alleged liability for testimony made during his criminal prosecution. But nowhere in his Brief in Opposition does Plaintiff reference any such testimony. So it is clear that Defendants did not properly raise this issue before the Court, and their arguments to the contrary are based on distortions of the record.

Second, to the extent that qualified immunity is mentioned in Plaintiff's Brief, it is mentioned only tangentially and not as an independent argument that the Plaintiff seeks to rebut. The only times that the phrase "qualified immunity" is used are in two discrete sentences on page 12 of Plaintiff's sixteen-page brief, in a section discussing whether the officers committed the torts alleged. Plaintiff only mentions qualified immunity off-hand by citing to two extra-jurisdictional cases in which an officer' misconduct overrode qualified immunity and gave rise to a Fourth Amendment claim. (*See* Doc. 84 at 12.)

From the context of these passages, the Court does not find that Plaintiff placed qualified immunity at issue. Plaintiff's discussion is clearly a discussion only of what is necessary to show the elements of the torts he alleged. The Court reads the references to qualified immunity only as illustrations of what other Courts—whose decisions are not binding in this District—have considered to be conduct giving rise to a cause of action.

This interpretation is supported by the fact that Plaintiff never argues that the officers lost qualified immunity; he only argues that they satisfied the elements of the torts.[1]

In contrast to the elliptical nature of Plaintiff's comments, the Defendants devote nearly two and a half pages of their fourteen-page Reply Brief to the issue of qualified immunity. (See Defs. Officers Arthur, Borowicz, and Flesher's Reply Mem. of Law in Supp. of Their Am. Second Mot. for Summ. J., Doc. 90, at 11-14.) This, however, as discussed above, perverts the purpose of the Reply Brief, which becomes a vehicle for inequity when it is allowed to raise issues not raised in previous briefs. Plaintiff cannot file a sur-reply to a reply brief as a matter of right, so any attempt to use a reply brief as a forum to raise new issues is properly prohibited.

In light of the foregoing, the Court concludes that it acted perfectly within the bounds of its discretion when it refrained from providing a ruling on qualified or absolute immunity. Certainly, the Court cannot conclude that its abstention from providing such a ruling was a "manifest injustice."

This does not, however, mean that the immunity issues are waived. Qualified and absolute immunity can be raised at any time. See, e.g., Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991) ("[B]ecause the entitlement is an immunity from suit rather than a mere defense to liability, we repeatedly have stressed

---

[1] Even if qualified immunity and the elements of the relevant torts would ordinarily be considered together, neither party considered them together in any of the previous filings, so raising the issue in a reply brief is inappropriate.

7

the importance of resolving immunity questions at the earliest possible stage in litigation.") (internal citations, quotations, and alterations omitted). However, a Motion for Reconsideration by definition can only pertain to issues that were actually considered. Issues that were not properly brought before the Court in the first Motion cannot be "reconsidered" because they were never considered in the first place. Indeed, in the present case, immunity could not have been considered based on the summary judgment filings without acting inequitably toward the non-moving party. Whether through strategy or oversight, Defendants did not invoke any kind of immunity in their Motion for Summary Judgment. Evidently, they now regret that decision. But it is not the Court's responsibility to *sua sponte* save Defendants from their own mistakes.

### b. Selective Enforcement

Next, Defendants argue that the Court committed another manifest injustice when, "recognizing Matthews did not meet his burden for a selective prosecution claim, [the Court] instead substituted and ruled on the separate, distinct claim of selective enforcement in denying Defendants' Motion for Summary Judgment." (Doc. 95 at ¶ 14.) This is in response to footnote 3 of the Court's Opinion, which noted that Plaintiff's claim for "selective prosecution" actually described a claim for "selective enforcement" and proceeded to rule on it as such. (Doc. 92 at 17 n.3.)

Defendants' argument is somewhat ironic: while their previous grounds for reconsideration objected that the Court did *not* raise issues *sua sponte* that would have redounded to their own benefit, now they object that the Court *did* raise other issues *sua sponte* that do not work to their immediate advantage. Thus, they write: "[I]t is not the duty of the Court to *sua sponte* allow an amendment to the pleadings long after discovery is closed and defendants have not had an opportunity to address such a claim." (Doc. 95 at ¶ 15.)

This argument is properly before the Court on a Motion for Reconsideration because it concerns disputes with the Court's Opinion itself which could not have been raised until after the Opinion was issued. Nonetheless, the Court cannot agree that it committed a "manifest injustice" by not granting summary judgment for a labeling error.

At the outset, it is simply untrue to claim that Defendants have not had the opportunity to address a selective enforcement claim. As the Court stated in its Opinion, whether one treats Plaintiff's Complaint as alleging selective prosecution or selective enforcement "does not change the outcome of any substantive analysis." (Doc. 92 at 17 n.3.) That is because, while selective enforcement and selective prosecution are distinct claims, the elements of each are analytically the same.

A cursory look at the case law confirms this conclusion. Thus, the Third Circuit has defined the elements of a selective enforcement claim as follows:

9

> To establish a selective-enforcement claim, a plaintiff must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) "that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, or to prevent the exercise of a fundamental right."

*Dique v. New Jersey State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (quoting *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (internal alterations omitted)).

The elements of a selective prosecution claim are nearly identical:

> To establish a claim of selective prosecution, [a plaintiff] must demonstrate two factors. First, he must provide evidence that persons similarly situated have not been prosecuted. Second, he must show that the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor, or that the prosecution was intended to prevent his exercise of a fundamental right.

*United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989).

The difference between the two claims is that selective enforcement is a claim against government enforcement officials generally, whereas selective prosecution is a claim against prosecutors. In the present case, prosecutors are not named as parties, nor is the conduct of any prosecution at issue. The factual allegations beginning in paragraph 12 of Plaintiff's Complaint all refer to the circumstances surrounding police enforcement against Plaintiff. (*See* Second Am. Compl., Doc. 48, at ¶¶ 12-32.) Only paragraphs 30 and 31 refer to Plaintiff's criminal trial, but the only allegation in either paragraph that Plaintiff makes against a Defendant is in reference to non-movant Thomas Logan's alleged false testimony at trial. This testimony has nothing to do with

the substance of the underlying prosecution or with the elements of a selective prosecution claim. (*See id.* at ¶ 31.) Moreover, Defendants never dispute that the prosecution is not at issue: in their Motion for Summary Judgment, they seek to defeat Plaintiff's selective prosecution claim by referring only to what they did at the time of his arrest.[2] (*See* Doc. 77 at ¶¶ 37-52.) Plaintiff's Brief in Opposition seeks to rebut these claims—but, once again, it argues only by reference to what the Defendants did at the time of Plaintiff's arrest, and not by reference to any prosecution. (*See* Doc. 84 at 14.)

Accordingly, when this claim was presented to the Court by Motion for Summary Judgment, it was treated by all parties as a claim for selective enforcement in everything but name. As the Supreme Court has held:

> It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of . . . mere technicalities. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. The Rules themselves provide that they are to be construed "to secure the just, speedy, and inexpensive determination of every action." Rule 1.

*Foman v. Davis*, 371 U.S. 178, 181-82, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962) (internal citations and quotation marks omitted).

---

[2] Though Defendants cite selective prosecution cases to make their arguments, (*see* Doc. 77 at ¶¶ 32-36), the Motion makes clear that they believe these cases apply to the facts of Plaintiff's arrest. Defendants never argued that Plaintiff failed to state a legal claim for selective prosecution until this Court brought the distinction between the two claims to the parties' attention.

Here, it is true that the decision to construe Plaintiff's claim as a claim for selective enforcement rather than selective prosecution was made *sua sponte* and not on a formal motion to amend the Complaint, as is more common. However, if the Court did not proceed in this manner, it would be forced to choose between two unpalatable options, neither of which is consistent with the well-established policy laid out in *Foman, supra*. First, the Court could have dismissed the claim in its entirety. But this would have been to exalt form over substance by avoiding the merits of a claim, which all parties addressed in their respective motions and briefs, based only on a labeling error. Alternatively, the Court could have ordered Plaintiff to amend his Complaint. But this would have been Plaintiff's fourth complaint in a case that was filed roughly three and a half years ago. Amendment would undo the progress that has been made in bringing this case closer to trial, by pushing it back to the pleading stage, and would therefore violate Rule 1's directive to secure the "just, speedy, and inexpensive determination of every action."

Rather than follow these self-defeating courses, the Court concluded that the better option was to construe the cause of action in the way that all parties had effectively construed it throughout the entire two years since Plaintiff's Second Amended Complaint was filed. To do so was not a manifest injustice, but rather was consistent

with the policies imposed by the Supreme Court and the Federal Rules. The Court sees no reason to reconsider its decision to comply with those policies.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Reconsideration (Doc. 95) is **DENIED** and the Court's Order and Opinion of August 5, 2013 shall remain in effect. A separate Order follows.

_____
Robert D. Mariani
United States District Judge