**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Richard Matthews | : | |
|     Plaintiff, | : | CIVIL ACTION NO.: 10-cv-1215 |
| v. | : | |
| | : | |
| Runco's Tavern & Grill, Inc., et al | : | |
| | : | JURY OF TWELVE (12) JURORS DEMANDED |
|     Defendants | : | |

## PLAINTIFF'S TRIAL BRIEF

Pursuant to Local Rule 39.7 and this Honorable Court's Order of August 22, 2013, Plaintiff, Richard Matthews, submits the following trial brief.

**I.     Succinct Statement of Facts.**

On February 15, 2009, Plaintiff, Richard Matthews ("Matthews") was at Runco's Bar & Grill, Inc. ("Runco's") located at 120 Lincoln Street, Olyphant, PA. At the time, Matthews was inside Runco's Bar when Thomas Logan ("Logan") and non-party, Brian Doughton began fighting inside the bar which subsequently spilled outside. Logan grabbed Brian Doughton by the neck with both handsAs the two men were grappling they both shuffled out the front door of Runco's and out onto the sidewalk.

Logan had instigated a fight and argument with Brian Doughton earlier in the night, which was subsequently broken up by Robert Doughton. Once outside, Brian Doughton was on top of Logan, and Logan on top of Brian Doughton wrestling and punching each other. Brian Doughton had punched Defendant Logan in the face several times and Logan was knocked down by Brian Doughton and hit face first into the sidewalk.

Matthews, being friends with Robert Doughton, attempted to break up the fight, along with other individuals at the scene at which point, Thomas Logan attempted to punch Richard Matthews without reason or justification. At some point Thomas Logan's wife jumped on

Matthews' back. At the time that Noreen Logan jumped on Plaintiff's back she had bit his right hand and his finger which dropped him to his knee. After Matthews had bitten Noreen Logan in an effort to get her fingers out of his mouth and out of his face, Plaintiff Noreen Logan bit Matthews on the hand causing a large cut which required medical attention. At no time did Matthews punch anyone. At no time did Logan aggravate his pre-existing shoulder injury as a result of the altercation at Runco's Tavern. Although, Brian Doughton was trying to jostle Logan's shoulder and was heard saying, "how's your arm feel now Logan". At no time did Matthews ever say anything to Logan about his shoulder.

After the incident, Matthews went back inside the bar to get a towel to treat the bite wound on his hand because it was "pouring blood". Eventually other individuals present at the scene broke up the fight between Logan and Doughton.

After the initial altercation, Logan then began screaming in the street yelling and cursing at other individuals located at the scene and was completely out of control. Logan immediately telephoned 911 and advised the dispatcher that there was a "riot" at Runco's and to dispatch all police cars in the area. At the time of the incident, Defendant Logan attempted to punch non-party, Marjorie Runco, and told her "F-U bitch I will own this bar".

Then, Defendants Arthur, Borowicz and Flesher were dispatched to Runco's Tavern. Upon their arrival, they immediately talked with Defendant Logan who instructed them to make arrests and advised that their jobs were in jeopardy if they refused to do what he said. There were numerous non-party witnesses who offered to give statements to the police as to what happened, but Officer Arthur was not discussing the fight with Marjorie Runco, who advised that Arthur did not want to speak with her about the incident. Marjorie Runco is expected to testify

that Matthews was not even involved in the incident, yet the Police Officer Defendants did not want to hear what she had to say about the incident.

At the scene of the incident, Marjorie Runco provided exculpatory information concerning Plaintiff.  Mrs. Runco specifically advised Defendants Flesher and Arthur that she never saw Plaintiff hit or strike Logan.  Further, Mrs. Runco advised Defendants Arthur and Flesher that Logan had instigated the entire fight and further, she explained to Defendant Flesher at Logan attempted to punch her.  Mrs. Runco stated that Officer Arthur cut her off, ignored her statement, and refused to listen to her.  In addition, Defendant Logan was screaming and dictating which officer should get where, and Marjorie Runco thought it was strange that Defendant Logan was dictating where the police officers should go to investigate.  Defendant Logan instigated the entire event and fabricated his version of events to the Police Defendants, yet the Police Officer dismissed what she was saying at the scene of the incident.

While the officers were speaking with Marjorie Runco, Defendant Logan is still in the middle of the street, and he charges down the street through the officers and start swinging at Brian Doughton.  Defendants Borowicz and Flesher interviewed Plaintiff while they took Plaintiff to the hospital for medical attention, and Plaintiff calmly explained to Borowicz and Flesher what had happened, that he had attempted to break up the fight.  Plaintiff explained to Defendants Borowicz and Flesher how he had come to bite Noreen Logan's finger (he was trying to get her finger out of his mouth), and how his finger was bitten as well.

Defendants Flesher and Borowicz took Plaintiff to CMC Hospital, prior to taking him to jail where he was treated for a bite to his finger.  Plaintiff volunteered to give the officers a written statement after they had read his Miranda rights prepare the written statement while in the hospital, however Flesher never actually read Matthews' written statement.  After receiving

treatment at the hospital, Matthews was taken to jail for approximately six hours. Defendant Borowicz plainly testified that he did not consider Matthews' written statement in any way prior to charging him with aggravated assault.

During the incident and afterwards, Richard Matthews was not visibly intoxicated. However, Thomas Logan was intoxicated at the time of the incident. At the scene of the incident, testimony and evidence will show it was apparent that Logan was directing the police telling them that he had been attacked.

Logan knew Officers Arthur, Flesher and Borowicz prior to the night of February 15, 2009. Flesher and Logan grew up in the same town, and their families grew up together and were acquaintances. And, Defendant Logan identified himself to the 911 dispatcher while he was requesting Olyphant Police to arrive at Runco's Tavern. Thomas Logan was never arrested for his role in the incident. Yet, Plaintiff, Richard Matthews was charged with assault, aggravated assault and disorderly conduct.

According to Arthur, the decision to charge Richard Matthews with an aggravated assault versus a simple assault was due to the seriousness of the injuries to Thomas Logan, specifically, the "injury" to Logan's shoulder. Arthur testified that he believed that someone had made a comment about Logan's shoulder being damaged, and that Matthews had made a comment to Logan during the altercation about attempting to injure his shoulder. But, Thomas Logan never said to the police either verbally or from his written statement that Richard Matthews tried to hurt his shoulder. Matthews made no such comment to Tom Logan. On the night of the incident, Logan was not wearing a sling or any other medical implement or device with regards to a shoulder injury that he sustained in December 2008. In fact, Logan and Plaintiff only met for the very first time on the night of the incident, shook hands and were introduced to each other

when they first arrived at the bar. At no time did Plaintiff have any knowledge that Defendant Tom Logan had a shoulder surgery.

The day after the incident, Defendant Logan and his wife Noreen went to the Olyphant Police Department and a provided statement to Officer Arthur. Critically, the day following the incident, Defendant Logan had an MRI done on his shoulder which showed no additional damage to a prior shoulder injury. Logan did not have any fractured ribs as a result of the fight, he did not receive any stitches for a cut to his lip. Logan had seven stitches to a cut under his left eye. At no time did Officer Flesher make any attempt to obtain statements concerning the incident with people who he knew to be witnesses of the fight.

Officer Flesher signed an affidavit of probable cause without direct knowledge of the contents set forth within it and did not provide any facts set forth in the affidavit. The Defendant officers never actually witnessed anyone fighting. And, at no time during the incident did Richard Matthews ever have a weapon, and no one has ever accused Matthews of having a weapon. The Defendant Police Officers never had any conversation with each other about whether to charge Logan with a crime. Borowicz personally reviewed the written statement of Marjorie Runco prior to the Plaintiff's trial. Nonetheless, he continued the prosecution of the charges against Richard Matthews.

Arthur knew that Plaintiff had been bitten during the incident as well. And further, Arthur testified that he believed that Plaintiff had been bitten by Noreen Logan. On October 21, 2009 Plaintiff was found not guilty of the assault and disorderly conduct counts, and further the aggravated assault count filed against Plaintiff was nolle prossed.

## II. Position of the Plaintiff as to Claims and Anticipated Legal Issues.

Based on the prior testimony and evidence expected to be introduced at trial, Plaintiff will seek to establish federal and state law claims for malicious prosecution as well as a selective enforcement claim.

      a. <u>Plaintiff asserts a malicious prosecution claim against Defendants, Arthur, Borowicz and Flesher.</u>

The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause. <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 482 (3d Cir. 1995). Probable cause to arrest exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. <u>Id</u>. at 483; <u>United States v. Cruz</u>, 910 F.2d 1072, 1076 (3d Cir.1990) (citation omitted), <u>cert</u>. <u>denied</u>, 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991); <u>United States v. Massac</u>, 867 F.2d 174, 175 (3d Cir.1989).

A police officer who arrests an individual without probable cause may be liable for damages in a civil rights suit. <u>Id.</u>; <u>Barna v. City of Perth Amboy</u>, 42 F.3d 809, 819 (3d Cir. 1994). However, police officers, like other governmental officials, are protected from liability for civil damages where their conduct in performing a discretionary function does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Orsatti</u>, 71 F.3d at 483.

For Fourth Amendment purposes, the issue is not whether the information on which police officers base their arrest resulted from a professionally executed investigation; rather, the issue is whether that information would warrant a reasonable person to believe that an offense

has been or is being committed by the person to be arrested. <u>Orsatti</u>, 71 F.3d at 484. The focus is upon the information the Detectives had available to them at the time, not on whether the information resulted from exemplary police work. <u>Orsatti</u>, 71 F.3d at 484; see also <u>Barna</u>, 42 F.3d at 819.

Here, Defendants Arthur, Borowicz and Flesher unlawfully arrested Plaintiff in violation of his 4th Amendment right guaranteeing Plaintiff the right to be free from unreasonable seizures. <u>Maples v. City of Atlantic City</u>, 2008 WL 2446825 (D.N.J.,2008). Plaintiff was unlawfully arrested. An arrest is unlawful and, thus, actionable if it is effectuated without probable cause. <u>Patzig v. O'Neil</u>, 577 F.2d 841, 848 (3d Cir.1978). Probable cause exists when the facts are such that a reasonably prudent person would believe that a crime had been committed. <u>Gerstein v. Pugh</u>, 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Thus, the question this Court must determine is whether the facts available to Defendants Arthur, Borowicz and Flesher, at the time of arrest would warrant a reasonably prudent person to believe that Plaintiff had committed the violations he was charged with. <u>Beck v. State of Ohio</u>, 379 U.S. 89, 98, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) ("[w]hen the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed") (quoting <u>Carroll v. United States</u>, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)).

      b. <u>Plaintiff asserts a selective enforcement claim against Defendants Arthur Borowicz and Flesher.</u>

In order to establish a claim of selective enforcement, a plaintiff must show that similarly situated persons have not been prosecuted and that the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor, or that the

prosecution was intended to prevent his exercise of a fundamental right. Crane v. Cumberland County, Pa., 64 Fed. Appx. 838, 840 (3rd Cir. 2003), (citing United States v. Schoolcraft, 879 F.2d 64, 68 (3rd Cir.1989)).

Even if it can be established that Plaintiff had some culpability for the fight (which is denied) and injuries to Logan, there is ample evidence and facts set forth above to give rise to a selective enforcement claim. There is no adequate explanation as to why the Police Officer Defendants failed to arrest or otherwise detain Logan as a result of the fight, other than the inference that it was because Logan was a Police Officer.

**III.     Other Matters.**

The parties have served exhibit lists, witness lists and motions in limine, and this Honorable Court issued an opinion and order on the Defendants motions for summary judgment which Plaintiff will rely upon at trial, as well.

**WEISBERG LAW**

/s/ Graham F. Baird
Matthew B. Weisberg, Esquire
Graham F. Baird, Esquire
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Richard Matthews | : | |
|     Plaintiff, | : | CIVIL ACTION NO.:  10-cv-1215 |
| vi. | : | |
| | : | |
| Runco's Tavern & Grill, Inc., et al | : | |
| | : | JURY OF TWELVE (12) JURORS DEMANDED |
|     Defendants | : | |

## **CERTIFICATE OF SERVICE**

    I, Graham F. Baird, Esquire, hereby certify that on this 3rd day of March, 2014, a true and correct copy of the foregoing Plaintiff, trial brief was served via ECF upon the following parties:

Anthony R. Sherr, Esq.
Mayers, Mennies & Sherr, LLP
3031 Walton Road
Building A, Suite 330
P.O. Box 1547
Blue Bell, PA 19422-0440

Paul Gregory Lees, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
1495 Valley Center Parkway
Suite 350
Bethlehem, PA 18017-2342


                                         **WEISBERG LAW**

                                         /s/ Graham F. Baird
                                         Matthew B. Weisberg, Esquire
                                         Graham F. Baird, Esquire
                                         Attorneys for Plaintiff